## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

———————————————————

)
UNITED STATES OF AMERICA     )
)
    v.             )        CONSOLIDATED CASES:
)
ANTHONY SABETTA,      )        00-cr-135-S-PAS
IKE WEEMS,           )        00-cr-142-M-LDA
BRIAN PAIGE,         )        03-cr-069-M-PAS
ALBERTO RODRIGUEZ,   )        04-cr-050-S
KENDALL ROSE,       )        06-cr-045-M-LDA
HENRY LEE, and      )        12-cr-008-M-PAS
AARON E. YOUNG,     )        13-cr-036-S-LDA
)
       Defendants.     )
)
———————————————————)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief United States District Judge and JOHN J. MCCONNELL, JR., United States District Judge.[1]

Before the Court are the Defendants' motions under 28 U.S.C. § 2255 to vacate, set aside, or correct their sentences.  All the Defendants were sentenced after being convicted of violating 18 U.S.C. § 922(g), which makes it unlawful for felons "to possess in or affecting commerce, any firearm or ammunition."  All the Defendants received mandatory sentences of at least 15 years pursuant to the Armed Career Criminal Act (ACCA), which requires a sentence of at least that length for possessing a firearm or ammunition when a person has three prior convictions by any court for

———————————————————

[1] With the consent of all parties (*see, e.g.*, Tr. of Hr'g on Mot. to Vacate at 3–4, *United States v. Weems*, No. 00-142 (D.R.I. Aug. 4, 2016), ECF No. 220 [hereinafter Mot. to Vacate Hr'g Tr.]), the District Judges assigned to these cases held a joint hearing on the motions; Chief Judge Smith and Judge McConnell independently reached the conclusions contained in this Memorandum & Order.

violent felonies or serious drug offenses or a combination of both.  18 U.S.C. § 924(e).  For persons without three qualifying predicate convictions, the statute permits a maximum sentence of 10 years.  18 U.S.C. § 924(a)(2).  The Defendants argue that they no longer have three qualifying predicate convictions because of the United States Supreme Court's recent decision in *Johnson v. United States* (*Johnson II*), 135 S. Ct. 2551 (2015), which invalidated the ACCA's residual clause for being unconstitutionally vague.[2]  Specifically, the Defendants argue that their convictions for the Rhode Island offense of Felony Assault/Assault with a Dangerous Weapon ("ADW") no longer qualify as ACCA predicate offenses.[3]

The Court holds that because Rhode Island's ADW can be satisfied with a mens rea of recklessness, and the ACCA requires a mens rea of more than recklessness to constitute a violent felony under 18 U.S.C. § 924, six of the Defendants (Weems, Sabetta, Paige, Rodriguez, Rose, and Lee) no longer have the necessary three predicate convictions to qualify as an Armed Career Criminal.  The sole exception is Defendant Young, whose motion raises additional issues that need further analysis.[4]

---

[2] Five of the seven Defendants (Weems, Sabetta, Paige, Rodriguez, and Rose) have been incarcerated for longer than 10 years.  They argue, accordingly, that their current incarceration is in excess of the statutory maximum permitted for their crime of conviction.

[3] The Defendants Paige and Young also argue that their convictions for second-degree robbery in violation of R.I. Gen. Laws § 11-39-1 do not qualify as violent felonies.  Because Paige has fewer than three predicate violent felonies in light of the decision we reach herein about Rhode Island's ADW offense, we do not reach the second-degree robbery argument in this decision.

[4] Defendant Young has three prior convictions, in addition to the conviction for Rhode Island ADW, which may qualify as predicate offenses under the ACCA—drug

Accordingly, the Court will schedule the Defendants, individually, for hearings on their motions to vacate and re-sentencings forthwith.

## BACKGROUND

In *Johnson II*, the Supreme Court narrowed the scope of crimes that qualify as "violent felonies" by invalidating the residual clause of that term's definition in the ACCA. 135 S. Ct. at 2563. The residual clause had defined a violent felony to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Without that clause, the definition of a violent felony comprises the "force clause" and the "enumerated offenses clause." The statute states:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> > (ii) is burglary, arson, or extortion, [or] involves use of explosives . . . .

18 U.S.C. § 924(e)(2)(B)(i)–(ii). In *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), the Supreme Court held that *Johnson II* announced a substantive rule that applied retroactively on collateral review.

All the Defendants contend that after *Johnson II* invalidated the residual clause, they have fewer than three ACCA-predicate convictions. In other words, they

---

trafficking; discharging a gun during a crime of violence resulting in injury; and second-degree robbery. Young has briefed the second-degree robbery issue and has preserved the right to brief the issue of discharging a gun during a crime of violence.

argue that at least one of their predicate convictions only qualified as a violent felony under the residual clause and does not qualify under either the force clause or the enumerated offenses clause.  The Government responds that all the Defendants still have three predicate qualifying convictions because their contested convictions all have "as an element the use, attempted use, or threatened use of physical force against the person of another."[5]  18 U.S.C. § 924(e)(2)(B)(i).  The Court is tasked with deciding whether the convictions contested by the Defendants qualify as violent felonies under the statute's force clause.

## ANALYSIS

The Court's analysis proceeds in three steps.  First, the Court determines whether to apply the categorical or the modified categorical approach in evaluating Rhode Island's felony assault statute.  As discussed below, the modified categorical approach is appropriate because the underlying state statute is divisible.  The Court therefore must review *Shepard*-approved documents of the individual Defendants' underlying convictions to determine which specific offenses within the divisible statute served as the bases for the convictions.  For six of the Defendants, the offense was assault with a dangerous weapon; for Defendant Lee, it was felony assault by use of devices similar in appearance to a firearm, which is functionally the same as ADW.

---

[5] The United States Supreme Court has interpreted the term "physical force" in the force clause to mean "violent force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States* (*Johnson I*), 559 U.S. 133, 140 (2010).

Second, the Court asks whether ADW has as an element, the *use*, attempted *use*, or threatened *use* of violent force *against the person of another*. The defendants argue that it does not because it can be committed with a mere recklessness mens rea. To address this argument, the Court must answer two additional questions, one of state law and the second of federal law. The first question is whether proving a recklessness mens rea is sufficient for an ADW conviction in Rhode Island. It is. The second question is whether a crime can qualify as a violent felony under the ACCA's force clause if it only requires proving a recklessness mens rea. It cannot. Concluding that a Rhode Island conviction for ADW does not require proving the use, attempted use, or threatened use of violent force against the person of another, the Court concludes that it is not categorically a violent felony as the ACCA defines that term.

Third, the Court finds that procedural default does not bar the claims of six of the Defendants (Weems, Sabetta, Paige, Rodriguez, Rose, and Lee) and reserves judgment as to Defendant Young.

Determining whether ADW in Rhode Island is a violent felony for purposes of ACCA is not a straight-forward task. Over 100 years of Rhode Island case law on ADW has meant that the state court has discussed the mens rea component in a variety of ways. The central questions we must decide here are not easy, and the answers are at times not clear. So, we are guided by the principal that "[t]he rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants." *Whitman v. United States*, 135 S. Ct. 352, 353 (2014) (Scalia, J., statement respecting the denial of certiorari); *see also United States v. Santos*, 553

U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."); *United States v. Gray*, 780 F.3d 458, 468 (1st Cir. 2015).

As explained below, the Court finds that ADW can be committed recklessly under Rhode Island state law. While we recognize that this is a close call for the reasons discussed below, we come to this conclusion because: first, assault has been defined by the Rhode Island Supreme Court as requiring an intent of malice or wantonness, *State v. Jeremiah*, 546 A.2d 183, 186 (R.I. 1988), *abrogated on other grounds by State v. Jackson*, 752 A.2d 5 (R.I. 2000); second, wantonness has been recognized to include reckless conduct, *see State v. Gilligan*, 50 A. 844, 847 (R.I. 1901); and third, the First Circuit has instructed us that an offense that may be completed recklessly is not a violent felony as that term is defined by the ACCA, *see United States v. Fish*, 758 F.3d 1, 16 (1st Cir. 2014).

## I.   Modified Categorical Approach

To determine whether an offense qualifies as a violent felony, the Court may "look only to the fact of conviction and the statutory definition of the prior offense," which is termed the "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990). To satisfy the force clause under the categorical approach, the use, attempted use, or threatened use of violent force must be an element of the prior offense. *See Descamps v. United States*, 133 S. Ct. 2276, 2293 (2013). If a conviction for the offense is possible without proof of attempted, threatened, or actual use of violent force, then the conviction does not qualify as a violent felony, even if the

defendant in fact used, attempted to use, or threatened to use violent force in the commission of the crime. *See id.* The facts of the defendant's crime do not matter, only the elements of the offense do.

Applying the categorical approach is simple when a statute sets out a single set of elements that defines a single crime but becomes complicated when the statute lists several alternative elements defining multiple crimes. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). In the latter case, the Court cannot tell which elements comprised the defendant's conviction just by looking at the statutory text. *Descamps*, 133 S. Ct. at 2279. To address that problem, the Court approved the "modified categorical approach," which permits looking at a limited class of documents—often called *Shepard*-approved documents—for the sole purpose of determining the defendant's relevant offense under a divisible statute. *Shepard v. United States,* 544 U.S. 13, 20 (2005). There is one hoop that courts must jump through before applying the modified categorical approach, which is determining whether the statute is divisible.

A. *Divisibility*

The threshold determination about a statute's divisibility requires the Court to decide if the statute lists alternative elements (i.e., it is divisible) or instead enumerates various factual means of committing a single element (i.e., it is indivisible). *Mathis*, 136 S. Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."). If the statute lists various means of committing a single

element, then the court must stick to the categorical approach.   However, if the statute lists alternative elements, then courts may apply the modified categorical approach to determine the actual offense underlying the defendant's conviction.

In *Mathis*, the Supreme Court easily deciphered the means versus elements conundrum because the state's highest court had previously resolved the question. *Id.*   The issue is also simple when statutory alternatives carry different punishments—those must be elements.   *Id.*   In some situations, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."   *Id.*   When the statute does not address the question, courts should look to state law for answers, as did the *Mathis* Court.   *Id.*

B. *Rhode Island's Statute*

The Defendants, except for Lee, were each convicted of R.I. Gen. Laws § 11-5-2, titled "Felony Assault."   Subsection (a) of the statute states: "Every person who shall make an assault or battery, or both, with a dangerous weapon, or with acid or other dangerous substance, or by fire, or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years."   R.I. Gen. Laws § 11-5-2(a).   The first order of business is to tackle *Mathis'* means versus elements distinction.

This statute is not the model of clarity, and the statute does not identify on its face whether it lists means or elements.   The Rhode Island Supreme Court, however, has recognized at least two distinct crimes under this statute.   These are assault with a dangerous weapon (ADW), *see, e.g., Jeremiah*, 546 A.2d at 186; *State v. Tillery*, 922

A.2d 102, 107 (R.I. 2007), and assault resulting in serious bodily injury, *see, e.g.*, *State v. Scanlon*, 982 A.2d 1268, 1278 (R.I. 2009).   Furthermore, a conviction for assault with a dangerous weapon may be based on a theory of assault, battery, or both.  *See State v. Soler*, 140 A.3d 755, 763 (R.I. 2016) (recognizing that an ADW conviction could be based on a battery theory).

Therefore, the Court concludes that R.I. Gen. Laws § 11-5-2 is divisible and that at least one of the offenses contained within that statute is ADW.  The Court further concludes that the act element of ADW can be accomplished by the means of an assault, a battery, or both.

C. *The Defendants' Convictions*

The next question is whether the Government has produced *Shepard*-approved documents proving that each Defendant was convicted of assault with a dangerous weapon, rather than some other offense possible under R.I. Gen. Laws § 11-5-2.  This is a defendant-specific inquiry.  In cases settled by plea, the court may look to "a transcript of [a] plea colloquy or [a] written plea agreement presented to the court, or . . . a record of comparable findings of fact adopted by the defendant upon entering the plea" to make this determination.  *Shepard*, 544 U.S. at 20.  Moreover, for most of the Defendants, the Government has produced the judgments of conviction demonstrating that the Defendants were convicted of "assault with a dangerous weapon," which leaves no question as to the offense of conviction.

The Government has produced sufficient documents to prove that each Defendant (except Lee) was convicted for ADW.[6]   For Lee, the Government has proved that he was convicted of an offense that is functionally similar to ADW.[7]   In

---

[6] For Rose, the Government produced a request to enter a plea of nolo contendere or guilty to the charge of "ADW" and a judgment of conviction for "Asslt W/Dangerous Weapon."   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 17, 14, *Rose v. United States*, No. 06-45 (D.R.I. June 22, 2016), ECF No. 26.   For Paige, the Government produced a request to enter plea of nolo contendere or guilty to the charge of "ADW" and a judgment of conviction for "asslt w/dangerous weapon."   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 33, 25, *Paige v. United States*, No. 03-69 (D.R.I. July, 13, 2016), ECF No. 64.   For Weems, the Government produced a request to enter plea of nolo contendere or guilty to the charge of "asslt w/dangerous weapon" and a judgment of conviction for the same.   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 34, 32, *Weems v. United States*, No. 00-142 (D.R.I. June 22, 2016), ECF No. 213.   For Young, the Government produced a request to enter plea of nolo contendere or guilty to the charge of "ADW" and a judgment of conviction and commitment for "felony assault," in addition to other offenses.   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 24–25, *Young v. United States*, No. 13-36 (D.R.I. June 20, 2016), ECF No. 46.   For Sabetta, the Government produced judgments of conviction for three separate ADW offenses (one of which was a juvenile conviction):   "assault dangerous weapon"; "asslt w/dangerous weapon"; and "asslt w/dangerous weapon."   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 15–17, 33–34, 45–46, *Sabetta v. United States*, No. 00-135 (D.R.I. June 21, 2016), ECF No. 143 [hereinafter Gov't Resp.].   For Rodriguez, the Government produced judgments of conviction for two separate convictions for "assault with a dangerous weapon," among other offenses not relevant here.   United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 14, 26, *Rodriguez v. United States*, No. 04-50 (D.R.I. June 30, 2016), ECF No. 135.

[7] The Government contends, and Lee's counsel conceded at the consolidated hearing on these motions, that he was convicted under R.I. Gen Laws § 11-5-2.1, which prohibits assault by use of devices similar in appearance to a firearm.   *See* Mot. to Vacate Hr'g Tr. at 86:14–16, *Weems*, No. 00-42, ECF No. 220 ("[The Government]'s correct on Henry Lee.   It's a different statute, but it does follow the exact same reasoning . . . .").   The distinction ultimately makes no difference, because as both parties agree, the law relevant to resolving the issue in this case is the same for § 11-5-2.1 as it is for ADW.   *See* United States' Resp. to Pet. under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case at 3, *Lee v. United States*, No. 12-08 (D.R.I. June 22,

sum, the Government has produced sufficient *Shepard*-approved documents to meet its burden as to each Defendant.

## II.   Categorizing Assault with a Dangerous Weapon

This takes us to the central question in these motions:  does assault with a dangerous weapon under R.I. Gen. Laws § 11-5-2 qualify as a violent felony as it is defined by the ACCA?  More specifically, does the crime of ADW in Rhode Island have as an element the use, attempted use, or threatened use of violent force against the person of another?  The Defendants' argument that it does not proceeds in two steps. First, they argue that in Rhode Island, assault with a dangerous weapon may be accomplished with a mere recklessness mens rea.  Second, they argue that the words "use against the person of another" in the ACCA require that a person act with a mens rea higher than recklessness.  The Defendants conclude that Rhode Island's ADW offense does not categorically have as an element the use, attempted use, or threatened use of violent force, and therefore cannot serve as a predicate under the ACCA.  Although it is somewhat of a close call upon which reasonable minds could differ, the Court agrees with the Defendants' conclusion.

### A. *Recklessness Is Sufficient for State Conviction of ADW*

Our task is first to determine the minimum mens rea necessary to sustain a conviction for ADW in Rhode Island.  To do this, we look to the Rhode Island Supreme

_____

2016), ECF No. 49 ("Petitioner assumes . . . that the case law applicable to the adjacent section 11-5-2 guides the . . . inquiry, at least for the mens rea element of the assault/battery component of the crime.  That is a reasonable assumption and the government therefore adopts it here for purposes of argument.").  The Court's conclusions for ADW under § 11-5-2 apply equally to Lee's conviction under § 11-5-2.1.

Court's construction of its state law.  *See United States v. Hart*, 674 F.3d 33, 41 (1st Cir. 2012).

The Rhode Island Supreme Court defines assault with a dangerous weapon as an "unlawful attempt or offer, with force or violence, to do a corporal hurt to another, *whether from malice or wantonness.*"  *Jeremiah*, 546 A.2d at 186 (emphasis added); *see also* Supp. Mem. Ex. D at 1, *Rose*, No. 06-45, ECF No. 31-4 [hereinafter Rhode Island ADW Pattern Instructions] (adopting the definition stated in *Jeremiah*); Supp. Mem. Ex. B at 78:6–12, *Rose*, No. 06-45, ECF No. 31-2 [hereinafter *State v. Soler* Jury Instr. Tr.] (defining assault with a dangerous weapon, in part as "an unlawful attempt or offer with force or violence to do a corporal hurt to another, whether from malice or wantonness," with no further definition of "wantonness").  Malice is clearly the more culpable mens rea as between "malice or wantonness."  *See State v. Gilligan*, 50 A. 844, 847 (R.I. 1901) (defining malice as "[t]he doing a wrongful act intentionally, without just cause or excuse; a wicked and mischievous purpose, which characterizes the perpetration of an injurious act without lawful excuse").  Therefore, our analysis must focus on how the Rhode Island Supreme Court has defined "wantonness."

The authority here is sparse, to be sure, but the decisions of the Rhode Island Supreme Court suggest that "wantonness" is synonymous with "recklessness."  In 1901, the Rhode Island Supreme Court described an offense done wantonly as an act "[d]one in a licentious spirit, perversely, *recklessly*, without regard to propriety or the rights of others; careless of consequences, and yet without settled malice."  *Id.* at 847 (emphasis added).  In a more recent case, in the context of manslaughter, the Rhode

Island Supreme Court again defined wanton and reckless conduct synonymously as conduct where the defendant "did not contemplate [the] result." *See State v. Hallenbeck*, 878 A.2d 992, 1005 (R.I. 2005) ("Manslaughter is the unlawful but unintentional killing of a human being without malice aforethought or premeditation. A person who wantonly or recklessly does an act which results in the death of another human being is guilty of manslaughter, even though he did not contemplate such a result.").[8]

Moreover, the Rhode Island Model Jury Instructions do not contain a definition of wantonness; rather the instruction simply states that ADW can be committed with either malice or wantonness. *See* Rhode Island ADW Pattern Instruction, *Rose*, No. 06-45, ECF No. 31-4; *see also State v. Soler* Jury Instr. Tr. at 78:6–12, *Rose*, No. 06-45, ECF No. 31-2. While we acknowledge that a modern Rhode Island trial justice or jury might not intuitively understand wantonness to mean what the Supreme Court

---

[8] In a second-degree murder case, the Rhode Island Supreme Court noted that one dictionary has defined wanton as "[m]arked by unprovoked, gratuitous maliciousness; capricious and unjust." *State v. Diaz*, 46 A.3d 849, 866 n.16 (R.I. 2012) (quoting The American Heritage Dictionary of the English Language 1938 (4th ed. 2009)) (internal quotation marks omitted). In *Diaz*, the defendant took issue with the involuntary manslaughter instruction, which stated in part: "[n]othing more is required than an intentional doing of an act which, by reason of its wanton or reckless character, exposes another person to injury, and causes injury or death." *Id.* at 863. The Supreme Court reversed the conviction in part, and in so doing, expressed its concern that the minds of ordinary intelligent lay persons may not appreciate the distinction "between the terms 'wanton or reckless character' and 'wanton recklessness' (as a theory of second-degree murder)." *Id.* at 866. This suggests that the Rhode Island Supreme Court does endorse a distinction between "wanton recklessness" as a theory of second-degree murder and actions of a "wanton or reckless character." The latter is implicated here.

said it meant in 1901, it is the Supreme Court's statement and not our modern intuitions that must control.

The Government relies on a couple of Rhode Island Supreme Court cases suggesting that ADW requires intent to do harm. *See, e.g.*, Gov't Resp. at 5, *Sabetta*, No. 00-135, ECF No. 143 (first citing *State v. Clifton*, 777 A.2d 1272, 1277 (R.I. 2001) (noting that the evidence in an ADW case "could sufficiently support an objective inference that Clifton possessed the required criminal intent to harm" a victim); and then citing *State v. Franco*, 750 A.2d 415, 418 n.2 (R.I. 2000) (noting that a count of ADW was dismissed at the close of evidence because there was no evidence of intent to do bodily harm)).  Those cases, however, are aberrations in Rhode Island case law. The Rhode Island Supreme Court has consistently defined ADW and simple assault as "general intent" crimes. *See State v. Speaks*, 691 A.2d 547, 550–51 (R.I. 1997) (explaining that specific intent is not required for ADW); *see also* Rhode Island ADW Pattern Instruction at 1 n.42, *Rose*, No. 06-45, ECF No. 31-4 ("Assault with a Dangerous Weapon is defined as a general-intent type crime."); *State v. Lomba*, 37 A.3d 615, 620 (R.I. 2012) (describing simple assault as a "general intent crime").  A general intent crime "require[s] only the intent to make bodily movement which constitutes the acts which the crime requires." *State v. Kausel*, 68 A.3d 524, 531 (R.I. 2013).  Put another way, a general intent offense requires only the "intentional commission of a reckless act." *Fish*, 758 F.3d at 16 (discussing Massachusetts ADW). That ADW is a general-intent crime is consistent with the conclusion that "wanton" means no more than "reckless" in Rhode Island.

Our conclusion is also bolstered by other courts.  The Ninth Circuit has also concluded (albeit without extensive analysis) that Rhode Island's ADW requires proving only a recklessness mens rea.  *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085 n.5 (9th Cir. 2015) ("Rhode Island's case law does not define 'wanton' to mean something more than recklessness."); *see also Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983) (equating wantonness with recklessness).

Prior First Circuit case law addressing whether Rhode Island ADW is a violent felony does not alter our conclusion.  In *United States v. Franco*, without further analysis, the court stated that "[b]y definition, [Rhode Island ADW] 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'"  993 F.2d 1531, at *2 (1st Cir. 1993).  The issue of mens rea was not discussed in the opinion.  In a second case, *Campos-Gomez v. Mukasey*, 298 F. App'x 22, 23–24 (1st Cir. 2008), the First Circuit examined the sole case offered by the defendant, *State v. Baker*, 38 A. 654 (R.I. 1897), and no others.  Since *Campos-Gomez* and *Franco* were decided before the Supreme Court and the First Circuit fully fleshed out the definition of "physical force" in the ACCA's force clause, *see Johnson v. United States (Johnson I)*, 559 U.S. 133, 140 (2010), and the mens rea required to satisfy that definition, *see Fish*, 758 F.3d at 16, and because *Campos-Gomez* and *Franco* did not address the arguments the Defendants raise here, the Court is not bound by them. *See Greenier v. Pace, Local No. 1188*, 201 F. Supp. 2d 172, 177 (D. Me. 2002) ("To the extent that the Court is unable to reconcile pre-existing First Circuit precedent with the Supreme Court's holding in an intervening case, the Court must follow the

15

dictates of the Supreme Court."); *cf. United States v. Rehlander*, 666 F.3d 45, 47 (1st Cir. 2012) (holding that prior circuit panel decisions "are binding on subsequent panels but not where intervening Supreme Court precedent requires reconsideration" (citing *United States v. Rodríguez,* 527 F.3d 221, 224–25 (1st Cir. 2008))).

We recognize that this a close call, and our conclusion is not free from doubt. The Rhode Island Supreme Court is the keeper of its criminal law; it could very well clarify this area of the law in the future and determine both that wantonness means something more than recklessness (a kind of junior varsity malice) and that recklessness is not sufficient to satisfy a conviction for ADW. Such a holding would not be unreasonable for a variety of reasons that we need not explore, but given the pressing nature of the issue before us and the Defendants' objection to certifying the question, we are left with what the court has said, albeit 115 years ago. *See* Mot. to Vacate Hr'g Tr. at 53:14–54:14, *Weems*, No. 00-142, ECF No. 220. Put simply, the words of the Rhode Island Supreme Court, coupled with the rule of lenity, *see Whitman*, 135 S. Ct. at 353 ("The rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants."), leads us to conclude firmly that the Defendants are correct that recklessness is sufficient to satisfy a conviction for Rhode Island ADW.[9]

---

[9] We share the same concern here that the First Circuit expressed well in *United States v. Fish*:

> Finally, the very complexity of the government's attempt to prove that every person convicted of ABDW in Massachusetts is, per se, a violent offender, without any adjudication or admission necessitating the conclusion, should itself give us pause. If someone with Fish's record had asked whether he could lawfully buy body armor, no one (other than

We next ask whether this requirement is sufficient to categorize Rhode Island ADW as a violent felony under the ACCA.

### B.  *Recklessness Is Insufficient under the ACCA*

Under First Circuit precedent, a crime that only requires proving a recklessness mens rea with respect to the attempted, threatened, or actual use of force against the person of another does not qualify as a violent felony under the ACCA's force clause.  *See United States v. Fish*, 758 F.3d 1, 16 (1st Cir. 2014) (analyzing the force clause in 18 U.S.C. § 16(b)).  In *Fish*, the First Circuit held that Massachusetts Assault and Battery with a Dangerous Weapon (ABDW) is not a crime of violence under 18 U.S.C. § 16(b) because its elements can be satisfied by the "intentional commission of a reckless act."  *Id.*  Similarly, we conclude that Rhode Island's ADW is not a violent felony under the ACCA.

In *Leocal v. Ashcroft*, 543 U.S. 1 (2004), the United States Supreme Court held that an offense that requires only a mens rea of negligence does not qualify as "a crime of violence" under 18 U.S.C. § 16, which is phrased similarly to the ACCA.  *See United States v. Hudson*, 823 F.3d 11, 16 (1st Cir. 2016) (describing 18 U.S.C. § 16 and the ACCA as "similarly worded federal statute[s]").  The Court reasoned that the

---

five Supreme Court Justices) could have confidently answered the question. In such a case, we cannot simply combine intricate statutory interpretations with judicial hunches about the conduct underlying prior convictions in order to imprison as a violent felon one whose conduct no jury has necessarily found to satisfy the elements that make an offense a crime of violence as defined by Congress. *See Leocal,* 543 U.S. at 11 n.8 . . . (noting that because "§ 16 is a criminal statute", "the rule of lenity applies") . . . .

758 F.3d 1, 16–17 (1st Cir. 2014).

word "use" in that statute "most naturally suggests a higher degree of intent than negligent or merely accidental conduct," because of its context (it is defining a crime of *violence*) and because of the terms surrounding it (it is contemplating applying physical force *against another*).  *Leocal*, 543 U.S. at 9 (citation omitted).

While *Leocal* left open the question of "whether a state or federal offense that requires proof of the *reckless* use of force against a person or property of another qualifies as a crime of violence," *id.* at 13, the First Circuit has since answered that question in the negative.  *See Fish*, 758 F.3d at 9 ("Although the Supreme Court explicitly limited its reasoning to negligence-or-less crimes, *Leocal*'s rationale would seem to apply equally to crimes encompassing reckless conduct wherein force is brought to bear accidentally, rather than being actively employed.").  The *Fish* court concluded that because the Massachusetts ABDW offense can be committed with the "intentional commission of a reckless act," it does not require a sufficient mens rea to be a "crime of violence."  *Id.* at 16.

Strictly speaking, *Fish*'s holding applied only to the definition of the word "use" in 18 U.S.C. § 16(b), which is the statute's residual provision defining a "crime of violence."  758 F.3d at 9.  The logic of the opinion, however, extends to the use of that word in the statute's force clause, 18 U.S.C. §16(a), and therefore to the ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i), which defines a "violent felony."  Other cases have made those connections.  In *United States v. Holloway*, the First Circuit held that a conviction under Massachusetts's simple assault and battery statute does not qualify as a violent felony under the ACCA's residual clause because it can be satisfied by a

18

mens rea of recklessness.  630 F.3d 252, 261 (1st Cir. 2011).  And in *United States v. Hudson*, the First Circuit considered whether Massachusetts's ADW statute required a sufficient mens rea to qualify as a violent felony under the ACCA in light of *Fish*. 823 F.3d at 15–18.  Finding that Massachusetts's ADW could not be committed with mere recklessness, but instead required "specific intent," the *Hudson* Court concluded that the statute did require a sufficient mens rea to qualify as a violent felony.  *Id.* at 17.[10]

Even more recently, in *Bennett v. United States*, one of our sister district courts set aside a sentence pursuant to 28 U.S.C. § 2255 precisely because at least one of the movant's convictions required only a recklessness mens rea, which that court found to be insufficient for the purposes of the ACCA.  Docket Nos. 1:16-CV-251-GZS, 1:94-CR-11-GZS, 2016 WL 3676145, at *3 (D. Me. July 6, 2016) ("The Court necessarily acknowledges that most decisions to address the question have found that a conviction that requires a mens rea of only recklessness does not satisfy ACCA's force clause." (citing *United States v. Parnell*, 818 F.3d 974, 981 & n.5 (9th Cir. 2016); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015); *United States v. Duran*, 696 F.3d 1089, 1095 (10th Cir. 2012); *Holloway*, 630 F.3d at 261–62; *United States v. McMurray*, 653 F.3d 367, 374–75 (6th Cir. 2011); *Cutshaw v. United States*, No. 209CR70RLJMCLC1, 2016 WL 3212269, at *2 (E.D. Tenn. June 7, 2016))).  In light

---

[10] The *Hudson* Court did not explicitly state that recklessness was an insufficient mental state under the ACCA, but it analyzed the issue as though that were the case. *See United States v. Hudson*, 823 F.3d 11, 15 (1st Cir. 2016).

of the First Circuit's precedents on the issue, we see no other conclusion that the *Bennett* court could have reached.

*Bennett* also grappled with one of the Government's arguments here, that the United States Supreme Court's recent ruling in *Voisine v. United States*, 136 S. Ct. 2272 (2016), requires a contrary result. *Bennett*, 2016 WL 3676145, at *3. We are persuaded by our sister court's conclusion that it does not. *See id.* at *4. *Voisine* dealt with a congressional enactment that "close[d] a dangerous loophole" in gun control laws by barring perpetrators of domestic violence who are convicted only of misdemeanors from possessing firearms or ammunition. 136 S. Ct. at 2276; *see also* 18 U.S.C. § 922(g)(9). The statute defined a "misdemeanor crime of domestic violence" to include any misdemeanor that has physical force as an element, in language very similar to the ACCA's force clause. *Compare* ACCA, 18 U.S.C. § 924(e)(2)(B)(i) ("has as an element the use, attempted use, or threatened use of physical force against the person of another") *with* 18 U.S.C. § 921(a)(33)(A)(ii) ("has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by [certain close relations or family members] of the victim"). The Supreme Court held that offenses requiring only a recklessness mens rea could satisfy the definition of a misdemeanor crime of domestic violence. *Voisine*, 136 S. Ct. at 2280.

There are three reasons why *Voisine* does not require the inference that a "violent felony" under the ACCA's force clause could also be committed with a mere recklessness mens rea. First, the *Voisine* Court explicitly stated that "our decision today concerning § 921(a)(33)(A)'s scope does not resolve whether § 16 includes

reckless behavior.   Courts have sometimes given those two statutory definitions divergent readings in light of differences in their contexts and purposes, and we do not foreclose that possibility with respect to their required mental states." *Id.* at 2280 n.4.   That means that the First Circuit's holding in *Fish* that recklessness is insufficient under § 16's definition of "crime of violence," and the implicit application of that holding to the ACCA's definition of "violent felony" in *Hudson*, continue to be binding in this Circuit.

Second, the United States Supreme Court had previously defined terms that are used identically in the ACCA and the Misdemeanor Domestic Violence Act to have different meanings.   In *Johnson I*, the Supreme Court held that the term "physical force" as it is used in the ACCA means "violent force," because it is describing a *violent* felony.   559 U.S. at 140; *see also United States v. Lawrence,* 627 F.3d 1281, 1284 (9th Cir. 2010) ("[T]he term 'violent felony' suggests a category of violent, active crimes." (citations omitted)).   The Supreme Court refused to extend that definition to the Misdemeanor Domestic Violence Act, determining that in that Act, the term "physical force" includes "any offensive touching, no matter how slight."   *United States v. Castleman*, 134 S. Ct. 1405, 1417 (2014) (Scalia, J., concurring in part and concurring in judgment).

The Supreme Court gave three reasons for interpreting identical language in the two acts differently.   One, Congress likely intended a lesser meaning of force for a statute aimed mostly at assault and battery laws, which themselves often require only the common law definition of force for conviction.   *Id.* at 1411.   Two, the term

21

"violent felony" connotes a higher degree of force than the term "domestic violence" because the latter "encompass[es] acts that one might not characterize as 'violent' in a nondomestic context." *Id.* at 1411–12. Three, the type of force that designates one an armed career criminal would logically be higher than the type of force that defines a domestic abuser. *Id.* at 1412. The unifying theme in the Supreme Court's reasoning is that when Congress defines a misdemeanor, it intends a lower bar for culpability than when it defines a felony, even when it uses some of the same words to describe both types of offenses. In the same vein, the lower mens rea sufficient for a predicate *misdemeanor* is not necessarily sufficient for a violent *felony*.

Third, in *Voisine* and *Castleman*, the Supreme Court worried about adopting a definition that would render the Misdemeanor Domestic Violence Act entirely inoperable in a large number of states. *See Castleman*, 134 S. Ct. at 1413 ("if offensive touching did not constitute 'force' under § 921(a)(33)(A), then § 922(g)(9) would have been ineffectual in at least 10 States—home to nearly thirty percent of the Nation's population"); *see also Voisine*, 136 S. Ct. at 2280 ("petitioners' reading risks rendering § 922(g)(9) broadly inoperative in the 35 jurisdictions with assault laws extending to recklessness"). That issue arises because § 921(a)(33)(A) was aimed at misdemeanor crimes of domestic violence, which are most often assaults or batteries. The same concern does not apply to interpreting the force clause in the ACCA to require a mens rea higher than recklessness. Congress was certainly not targeting crimes that require only a recklessness mens rea in crafting the ACCA, and

plenty of predicate crimes still qualify as violent felonies in every state, even though recklessness is insufficient under the force clause.

In conclusion, *Voisine* did not disturb the First Circuit's decisions about the mens rea required for a violent felony under the ACCA.  Crimes requiring proof of only a recklessness mens rea for the application of force do not have as an element the use, attempted use, or threatened use of violent force.  When a person purposely creates force and recklessly applies it, that person cannot categorically be said to attempt, or threaten, or actually use force against the person of another, as required by the statute.  *See Fish*, 758 F.3d at 16 (holding that the intentional commission of a reckless act is not sufficient to qualify as a crime of violence).[11]  Therefore, a crime that requires proof of a mens rea of only recklessness, such as Rhode Island's assault with a dangerous weapon, is not categorically a violent felony under the ACCA.[12]

---

[11] The government has filed two supplemental notices setting forth opinions from two other Circuits that have ruled that a crime that allows a recklessness mens rea can constitute a predicate conviction under the ACCA.  *See United States v. Fogg*, No. 15-3078, 2016 WL 4698954, at *3–4 (8th Cir. Sept. 8, 2016); *United States v. Howell*, No. 15-10336, 2016 WL 5314661, *9 (5th Cir. Sept. 22, 2016).  Those opinions do not change our analysis because we are bound by First Circuit precedent, namely, *Fish*, 758 F.3d at 9–10.

[12] The Defendants also argue that Rhode Island ADW does not require the use of *violent* force as defined by *Johnson I* because it encompasses an offensive touching with a dangerous weapon.  Although we are skeptical of this argument in light of *United States v. Whindleton*, we need not address it in light of our ruling on mens rea.  *See* 797 F.3d 105, 114 (1st Cir. 2015) ("[T]he element of a dangerous weapon imports the 'violent force' required by *Johnson [I]* into [an] otherwise overbroad simple assault statute.").

## III.   Procedural Default

The Government's final argument in opposition to these motions is that the Defendants have procedurally defaulted their challenges based on *Johnson II* because they did not raise the constitutionality *vel non* of the ACCA's residual clause at sentencing or on direct appeal.[13]

Under 28 U.S.C. § 2255, a defendant may be entitled to post-conviction relief from a sentence "in four instances:  if the sentence '(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack.'" *United States v. Duval*, 957 F. Supp. 2d 100, 105–06 (D. Mass. 2013) (quoting *David v. United States,* 134 F.3d 470, 474 (1st Cir. 1998)) (citations omitted); *see also* 28 U.S.C. § 2255(a)–(b). [14]   Because finality in criminal proceedings is favored, "[w]here a

---

[13] The Government did not raise the procedural default bar in several other Defendants' petitions in this Court, even though those Defendants also failed to preserve a challenge to the constitutionality of the ACCA's residual clause. *See* United States' Resp. to Pet. Under 28 U.S.C. § 2255 *Johnson* Claim in ACCA Case— Concession that Relief is Proper: *Angiolillo v. United States*, No. 07-83 (D.R.I. June 29, 2016), ECF No. 41; *Garcia v. United States*, No. 09-22, ECF No. 57; *Miller v. United States*, No. 05-44 (D.R.I. June 29, 2016), ECF No. 43; *Paschal v. United States*, No. 06-29 (D.R.I June 29, 2016), ECF No. 95; *Porraro v. United States*, No. 03-86 (D.R.I. June 29, 2016), ECF No. 60; *Ware v. United States*, No. 94-69 (D.R.I. June 29, 2016), ECF No. 53.  Procedural default is an affirmative defense that must be raised by the Government or it is waived.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997) ("Thus, procedural default is normally a 'defense' that the State is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'"  (quoting *Gray v. Netherland,* 518 U.S. 152, 166 (1996)).

[14] The Government implicitly acknowledges, and never challenges, that the Defendants' claims are of constitutional dimension; indeed, *Johnson II* declared the residual clause unconstitutionally vague.  *See, e.g.*, Gov't Resp. at 12, *Sabetta*, No. 00-135, ECF No. 143 ("Moreover, it does not help petitioner that, unlike *Johnson I,*

defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted).  None of the instant Defendants asserts actual innocence.

A defendant establishes cause where his or her claim is "so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984).  "[A] rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose." *Id.* at 15.  In *Reed*, a case involving a defendant's failure to raise a novel constitutional issue during his state court proceedings and appeal, the Supreme Court explained that, "if we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's failure to raise it, we might actually disrupt [lower court] proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition." *Id.* at 15–16.  But, while binding precedent may render an issue novel at times, "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Bousley*, 523 U.S. at 623 (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

Thus, the inquiry here is whether the state of the law at the time of each of the Defendants' sentencings and direct appeals was such that they did not have a

---

*Johnson II* has a constitutional basis; the cause and prejudice standard applies with the same force to constitutional claims.").

"reasonable basis" upon which to challenge the constitutionality of the ACCA's residual clause.  Where a decision of the United States Supreme Court (1) "explicitly overrule[s] one of [its own] precedents" or (2) "overturn[s] a longstanding and widespread practice to which the Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved," it follows that "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged" the lower court to adopt the position that the Supreme Court ultimately adopts.  *Reed*, 468 U.S. at 17.  In those circumstances, then, a defendant's failure to raise the issue is sufficiently excusable and the cause requirement is satisfied.  *Id.*[15]

In 2007, the Supreme Court, in *James v. United States*, 550 U.S. 192 (2007), held that the residual clause of the ACCA was not unconstitutionally vague.  This issue had not been raised and argued by the parties, but instead, it was suggested by Justice Scalia in dissent.  *See id.* at 210 n.6 ("While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his *amici*—that the residual provision is unconstitutionally vague.").  Four years later, in *Sykes v. United States*, Justice Scalia dissented and again raised the issue of vagueness without prompting from the parties.  564 U.S. 1, 28 (2011) (Scalia, J.,

---

[15] *Reed* instructs that there is a third circumstance in which a claim may be novel—where the Supreme Court has "disapprov[ed] a practice [the Court] arguably has sanctioned in prior cases."  *Reed,* 468 U.S. at 17.  There, the analysis is more nuanced and not pertinent to this discussion.

dissenting) ("We should admit that ACCA's residual provision is a drafting failure and declare it void for vagueness.").

Not until 2015, in *Johnson II*, did the Supreme Court receive full briefing and hear argument on the vagueness issue. *Johnson II*, 135 S. Ct. at 2556. For the third time, the issue was not raised by the parties. Rather, after argument, the Court *sua sponte* directed the parties to address whether the ACCA's residual clause was unconstitutionally vague. *Id.* In explicitly overruling *James* and *Sykes*, and in justifying its decision to depart from *stare decisis*, the Court emphasized that the issue had not been fully developed until *Johnson II*. *Id.* at 2562–63 ("But *James* and *Sykes* opined about vagueness without full briefing or argument on that issue—a circumstance that leaves us 'less constrained to follow precedent[.]'" (quoting *Hohn v. United States,* 524 U.S. 236, 251 (1998)).

With this backdrop in place, each of the instant Defendants has established cause for failing to raise his constitutional claim at the time of sentencing and direct appeal. For those sentenced before *James* (*viz.*, Rose, Weems, Sabetta, Rodriguez, and Paige), the Supreme Court had not spoken on the vagueness issue, and thus *Johnson II* represents a departure from a "longstanding and widespread practice" of which the lower courts had expressed near-unanimous approval. *See Reed,* 468 U.S. at 17. For the two Defendants sentenced after *James (viz.,* Lee and Young), *Johnson II* represents an explicit overruling of Supreme Court precedent. *Id.* Though the Government would have us accept that the state of the law rendered these Defendants' claims futile, not novel, the distinction between novelty and futility is

plain here: the Government does not point to, and the Court is not aware of, a single case that had held the ACCA's residual clause unconstitutionally vague before *Johnson II.* That is, the claim was not viable in any jurisdiction in the nation.[16] Accordingly, there was "almost certainly . . . no reasonable basis upon which [their attorneys] previously could have urged" the lower court to adopt the Supreme Court's holding in *Johnson II. Reed,* 468 U.S. at 17.

Many of our brothers and sisters in the District of Massachusetts, as well as elsewhere, have also reached this result. *See, e.g., United States v. Aponte*, No. 11-

---

[16] In asserting procedural default, the Government relies on *Damon v. United States*, 732 F.3d 1 (1st Cir. 2013). In *Damon*, the First Circuit held that a defendant who had failed to challenge the sufficiency of a Massachusetts conviction for assault and battery as a "crime of violence" under the Sentencing Guidelines at sentencing or on direct appeal was procedurally defaulted from moving under § 2255 to assert those claims. There, after the defendant's direct appeal, the First Circuit overturned prior Circuit precedent in *United States v. Holloway*, 630 F.3d 252 (1st Cir. 2011), and held that a Massachusetts conviction for assault and battery was not categorically a crime of violence under the ACCA in light of *Johnson I.* Following the First Circuit's decision in *Holloway*, Damon moved for relief under § 2255 arguing, among other things, that his procedural default should be excused because his claim was novel. *Damon*, 732 F.3d at 1, 5–6. The First Circuit found Damon's argument unavailing. The court reasoned that, though his claim may have been "futile" under prior precedent, it was not "novel," in light of both "the evolving Supreme Court caselaw and the number of comparable, albeit unsuccessful, challenges raised by previous defendants." *Id.* at 5. Accordingly, his claim was barred as procedurally defaulted without cause. *Id.* at 5–6. *Damon* is distinguishable from the instant cases because, there, the defendant did not press a constitutional claim only available to him after the Supreme Court (1) "explicitly overrule[d] one of [its own] precedents" or (2) "overtur[ned] a longstanding and widespread practice" of which the Supreme Court had not taken a position but where there was a "near-unanimous body of lower court authority expressly" approving it. *See Reed*, 468 U.S. at 17.

CR-30018-MAP, 2016 WL 5338505, at *1 (D. Mass. Sept. 22, 2016) ("*Johnson* explicitly overruled prior precedent and overturned longstanding and widespread—indeed virtually unanimous—prior authority."); *Turner v. United States*, 03-CR-10166-PBS, Hr'g Tr. 9:2–17, ECF No. 218 (D. Mass. Apr. 6, 2016); *McFarlane v. United States*, 05-CR-10130-RWZ, Hr'g Tr. 4:20–5:10, ECF No. 73 (D. Mass. Jan. 12, 2016); *cf. United States v. Duval*, 957 F. Supp. 2d 100 (D. Mass. 2013) (holding that the legal basis for a challenge to the underlying ACCA predicate offense was not available to counsel because of the settled law of the Circuit on the issue). Accordingly, we find that the issue of whether the ACCA's residual clause was unconstitutionally vague was sufficiently novel to excuse each of the Defendants' failure to raise it at sentencing or on direct review.

Next, the Defendants must establish prejudice; they do so easily.   For the reasons stated herein, the Court concludes that Rhode Island ADW does not constitute a violent felony under the ACCA's force clause.   Therefore, if the Defendants were sentenced today, their sentences would have been statutorily capped at 120 months.   Each Defendant received a sentence of at least 180 months.[17] It necessarily follows that they have demonstrated prejudice.

---

[17] As discussed, *supra* n.4, Defendant Young still has three prior convictions, in addition to the conviction for Rhode Island ADW, which may qualify as predicate offenses under the ACCA.  Ultimately, if he is able to demonstrate that he has fewer than three ACCA predicate offenses, and is thus not properly subject to the statutory minimum of fifteen years, he will have demonstrated prejudice.

Accordingly, Defendants Weems, Sabetta, Paige, Rodriguez, Rose, and Lee have demonstrated both cause and prejudice, and their claims for relief are not barred by procedural default.

## CONCLUSION

Rhode Island's offense of Assault with a Dangerous Weapon, as codified in R.I. Gen. Laws § 11-5-2, is not a violent felony, as that term is defined by the ACCA. Therefore, the Court will schedule the Defendants, individually, for hearings on their motions to vacate and re-sentencings forthwith.

IT IS SO ORDERED.

_WESmith_
_____
William E. Smith
Chief United States District Judge

_/s/ John J. McConnell, Jr._
John J. McConnell, Jr.
United States District Judge

October 24, 2016